## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DALE MILLER,** | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **WHEELER BRODIE et al.,** | : | **No. 15-4992** |
| *Defendants*. | : | |

## MEMORANDUM

PRATTER, J.                                                          SEPTEMBER 28, 2016

Dale Miller sued Wheeler Brodie and Barnes Transportation Services, Inc. (collectively "Barnes") for negligence following an accident between a tractor-trailer driven by Mr. Miller and a tractor-trailer driven by Mr. Brodie and owned by Barnes Transportation Services, Inc. Both parties retained accident reconstruction experts in support of their respective positions that the opposing party caused the accident. Barnes filed a Motion in Limine to preclude Mr. Miller's expert, Richard C. Moakes, from testifying at trial. Thereafter, Mr. Miller filed a Motion in Limine to preclude Barnes's experts from testifying at trial. After oral argument on the parties' motions, the Court ordered Mr. Miller to file a supplemental expert report. Mr. Miller complied, and, thereafter, the parties filed supplemental briefs. For the reasons that follow, the Court will deny both motions.

## I.      FACTUAL BACKGROUND

The accident at issue occurred on August 12, 2015 in Middlesex County, New Jersey. At the time of the accident, Mr. Miller and Mr. Brodie were both operating tractor-trailers traveling northbound on the New Jersey Turnpike. While the parties have differing accounts as to how the events transpired, the tractor-trailers collided, veered to the left, and eventually collided with the

center guardrail. Both vehicles were engulfed with flames due to an explosion which occurred once the vehicles collided with the guardrail.

According to Mr. Miller, he was traveling in the center northbound lane when Mr. Brodie improperly attempted to merge from the far right lane into Mr. Miller's lane. When Mr. Brodie allegedly moved into the center lane, his tractor-trailer struck Mr. Miller's vehicle. Thereafter, the two tractor-trailers veered to the left, colliding with the center guardrail. Mainly consistent with Mr. Miller's account of the accident, the New Jersey Police Crash Investigation Report states that Mr. Miller's vehicle cleared Mr. Brodie's truck by about half a truck length before the collision occurred.

In contrast to Mr. Miller's account of events, Mr. Brodie testified at his deposition that he was driving in the far right lane when he heard a thud toward the back of his vehicle. Mr. Brodie contends that Mr. Miller hit him first, specifically in the rear of his trailer. After this collision, Mr. Brodie claims that the impact caused his vehicle to veer left, eventually causing both tractor-trailers to collide with the center guardrail.

Ultimately, Mr. Miller suffered 1st, 2nd, and 3rd degree burns to his left leg, left arm, and right hand requiring skin grafts, a right rotator cuff tendon tear requiring surgery, and psychological injury. Mr. Brodie received five traffic citations due to his violations of the New Jersey Motor Vehicle and Traffic Laws, three of which were dismissed.

## II.  LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and provides that a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify if "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact at issue . . ." Fed. R. Evid. 702. In

challenges regarding admissibility of expert testimony, the burden is placed on the party offering the testimony to show by a "preponderance of proof" that it meets the standards for admissibility. *Rapp v. Singh*, 152 F. Supp. 2d 694, 698 (E.D. Pa. 2001) (quoting *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 592-93 (1993)). The Supreme Court addressed the operation and scope of Rule 702 in *Daubert*. Under *Daubert*, Rule 702's requirements have been said to embody "three distinct substantive restrictions of the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-43 (3d Cir. 1994)). Although *Daubert* was decided in the context of scientific knowledge, it has since been applied to testimony involving "technical or other specialized knowledge." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)). Acknowledging the trial court's gatekeeper role, the Third Circuit Court of Appeals has explained "[t]he District Court has broad discretion in determining the admissibility of evidence, and 'considerable leeway' in determining the reliability of particular expert testimony under *Daubert*." *Walker v. Gordon*, 46 F. App'x 691, 694 (3d Cir. 2002) (citing *Kumho Tire*, 526 U.S. at 152-53).

## III.   DISCUSSION

Barnes does not dispute that Plaintiff's expert Mr. Moakes is qualified, contesting only Mr. Moakes's reliability and fit.

### A.   Reliability

Rule 702 requires that expert testimony be supported by "appropriate validation – i.e., 'good grounds,' based on what is known." *Withrow v. Spears*, 967 F. Supp. 2d 982, 992 (D. Del. 2013) (citing *Daubert*, 509 U.S. at 590). To satisfy the requirement of reliability, an expert's

testimony must be grounded in "the methods and procedures of science" and must be "more than subjective belief or unsupported speculation." *Id.* (citing *Daubert*, 509 U.S. at 590).

Barnes argues that the Court should preclude Mr. Moakes from testifying at trial because his report and testimony lack support in scientific methodology, and are thus unreliable. Barnes asserts that Mr. Moakes failed to visit the accident scene, conduct any tests, apply any legitimate engineering principles, or perform accident reconstruction simulations. Barnes also argues that the physical evidence in this case does not allow for a valid reconstruction of the accident. Plaintiff disputes this characterization of Mr. Moakes's report, pointing out that Mr. Moakes's report states that he reached his opinions and conclusions after "applying commonly accepted accident reconstruction techniques and the laws of physics." Pl. Br. Opp. 8 (Doc. No. 18, Ex. 1). Plaintiff also notes that in coming to his conclusions, Mr. Moakes ultimately relied on Plaintiff's deposition transcript, Mr. Brodie's deposition transcript, the New Jersey Police Crash Investigation Report, an examination of the remains of Plaintiff's truck, a review of a publicly available video showing the aftermath of the crash, and the report of Barnes's experts. [1]

In support of their argument that Mr. Moakes should be precluded from testifying, Barnes relies on two cases from the Third Circuit Court of Appeals. In *Oddi*, the plaintiff was severely injured when his truck struck a guardrail and bridge abutment. 234 F.3d at 141. The plaintiff alleged that the truck was not crashworthy and that the manufacturer and designer of the truck had negligently failed to test the truck. The plaintiff retained an accident reconstruction/design engineer to support his contention that the truck's manufacture and design were defective. *Id.* Although the expert had reviewed photographs of the accident, witness statements, and the plaintiff's medical records and deposition testimony, he did not test his hypothesis or test the

---

[1]       Mr. Moakes's initial expert report did not take into consideration Mr. Brodie's deposition transcript or the report of Barnes's experts. Mr. Moakes's supplemental expert report incorporated these items into his analysis.

elements involved at the accident scene. The district court found that the expert's testimony did not satisfy the *Daubert* standards and excluded it. Although the expert met *Daubert*'s qualifications requirement, his testimony failed to satisfy the additional requirements of reliability and fit. *Id*. at 156. The *Oddi* court affirmed, finding that because the expert "conducted no tests and failed to attempt to calculate any of the forces on [the plaintiff] or the truck during the accident, he used little, if any, methodology beyond his own intuition." *Id.* at 158.

In *Meadows*, the court excluded plaintiff's expert's testimony in a case where plaintiff sustained serious injuries as a result of a pressure valve exploding in a mine. *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781 (3d Cir. 2009). Plaintiff's expert examined multiple valves of the same kind allegedly responsible for plaintiff's injury, testing them in both the "open" and the "closed" positions. *Id.* at 788. However, the expert was unable to replicate the exact conditions of the mine shield's hydraulic system when it failed in his testing. He testified instead that he employed "principles of physics" in determining why the pressure valve failed. *Id*. at 784. Ultimately, the court found that plaintiff's expert's testimony failed to meet the reliability and fit requirements for admissibility. *See id.*

Both *Oddi* and *Meadows* are distinguishable from the case at hand because both of those cases sounded in product liability. Accordingly, in *Oddi* and *Meadows*, the Third Circuit Court of Appeals deemed the experts' methodology and factual bases for their reports unreliable with respect to opining on, in the case of *Oddi*, the design of a truck, and in *Meadows*, the design of a valve. In *Meadows*, the Third Circuit Court of Appeals was concerned by the failure of the expert to replicate the conditions at the time of the accident when conducting his testing. *Meadows*, 306 F. App'x at 789. Similarly, in *Oddi*, the Third Circuit Court of Appeals faulted the expert for failing to test his theory concerning the design flaw he claimed was partly responsible for the

accident. *Oddi*, 234 F.3d at 157-58. Mr. Moakes, however, is not providing expert testimony on the design of a specific product, but rather is opining on the likelihood that Plaintiff's account of the accident is more probable than Mr. Brodie's.  Naturally, the considerations for determining the reliability of an expert opining on the likely events leading up to an accident are different than the considerations for determining the reliability of an expert opining on a product's manufacture or design.

Here, the record reflects a sufficient factual foundation to support Mr. Moakes's opinions. After consideration of Mr. Moakes's supplemental expert report, it is clear that Mr. Moakes's opinions are based on more than subjective speculation. Rather, as explained in his expert reports, Mr. Moakes examined Plaintiff's deposition transcript, Mr. Brodie's deposition transcript, the New Jersey Police Crash Investigation Report, the remains of Plaintiff's truck, a publicly available video showing the aftermath of the crash, and the report of Mr. Brodie's experts. Through this evidence, Mr. Moakes considered multiple theories of the accident, including those put forth by both Plaintiff and Mr. Brodie. Mr. Moakes then applied the laws of physics and principles of trailer dynamics, as well as commonly accepted accident reconstruction techniques, to logically conclude that it is probable that the accident occurred due to Mr. Brodie's truck moving from the right lane into the center lane and that it is not probable that the accident occurred because Plaintiff's truck moved from the center lane into the right lane. Accordingly, the Court determines that Mr. Moakes has met the reliability requirement.

### B.    Fit

Rule 702 also requires that expert testimony sufficiently fit, or be relevant to, the issue at hand. *Daubert*, 509 U.S. at 591. The relevance of expert testimony is largely determined by its ability to "assist the trier of fact to understand the evidence or to determine a fact in issue . . ." *Id.*

This has become known as Rule 702's 'helpfulness' standard, and requires a valid scientific connection to the pertinent inquiry in order for testimony to be admissible. *See id.*

Barnes argues that Mr. Moakes's testimony would not assist the trier of fact in determining the accident's cause and that if allowed to testify, Mr. Moakes would serve as nothing more than an additional attorney for Plaintiff. The Court disagrees. A lay person is not intimately familiar with the operation of tractor-trailers and how tractor-trailers may respond in the event of a collision. The Court concludes that Plaintiff has demonstrated that Mr. Moakes's testimony would be helpful to the trier of fact in determining the cause of the accident. Accordingly, the Court determines that Mr. Moakes has met the fit requirement. The proper avenue for Barnes to contest Mr. Moakes's expert reports is through cross-examination at trial. *See Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002) ("A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination.").[2]

## IV.   CONCLUSION

For the foregoing reasons, the Court denies both Mr. Miller's Motion in Limine and Barnes's Motion in Limine.

                                        *        *        *

---

[2]       Mr. Miller, in support of his Motion in Limine to Preclude Defendants' Mechanical Engineering Experts, essentially argues that if this Court were to preclude Mr. Moakes from testifying at trial, the Court should also preclude Barnes's experts from testifying at trial because all the experts relied on essentially the same information. Because the Court is denying Barnes's Motion and permitting Mr. Moakes to testify at trial, the Court will similarly deny Mr. Miller's Motion and permit Barnes's experts to testify at trial.

An appropriate order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE